Good morning, Your Honor. May it please the Court, my name is David Abney. I'm here with Brian Holahan, representing the appellants. Thank you for the honor of allowing us to discuss the case with you. The point of the case is that the estate is not a covered person and is not acting on behalf of a covered person. One of my worries here is that you may say you're just a nitpicking Philadelphia lawyer, but under McCutcheon we've gone back to 19th century and early 20th century contract formalism. And it's what's in the plan that matters, precisely what's in the plan. And in the plan it has a definition in the reimbursement section, after 87 pages of the rest of the contract we get to page 88, and it has a definition of what a covered person is for reimbursement and subrogation purposes. And a covered person is the plan participant who is deceased, so he's not there, or it's someone acting on behalf of the plan participant, and it says I'm including an estate. Well, you raise this, I kind of wonder if you raise this as a jurisdictional defense in the district court, but then on appeal you rely on it as a merits argument, and so I'm not sure why it wasn't waived. Well, we're doing both on the appeal. I believe, well, several reasons. First, I don't think that subject matter jurisdiction can be waived and it can be raised at any stage of the proceedings. Right, but why should we consider the argument that it goes to the merits? I mean, it's a very low bar in terms of, you know, we do have to have jurisdiction, you're correct, but you only raised it previously in a jurisdictional context, and now you're moving to using it for something else. Well, I believe it informs the court's analysis of the preliminary injunction. The main reason the preliminary injunction falls apart on the merits is that you don't have a covered person that you can apply the various requirements of a preliminary injunction. There's just nobody there that is someone who can be a target of a preliminary injunction in this particular case. And as far as the subject matter jurisdiction, that's evident on the face of the complaint, on the applications for injunctive relief, on every significant document in this case. The plan has always said, well, the plan participant was a covered person, so the estate is a covered person, and away you go. And everything falls apart if the estate is not a covered person. If Mr. Lancaster had lived and not died, the ERISA plan would have been able to recover the money paid out, correct? Yes, Your Honor. So why does or why should Mr. Lancaster's death change that outcome? Because of the way that the people at the plan drafted the plan documents. Judge Ripple in the second argument made a comment that some smart lawyer, maybe even you, put that choice of law clause into the contract. Well, the smart lawyers at the plans and the claims representatives and the insurance executives constructed this particular reimbursement subrogation clause. They put that language in. And if they had wanted to include a probate estate, they would have to have been even more clever in their drafting. I'm not exactly sure how you do it. I think it would probably have to be something in the nature of a codicil, that the plan participant is willing that I want my estate under my will to do XYZ in accordance with the plan. So under your interpretation, you know, people that bring the, family members that bring the lawsuit for the death of Mr. Lancaster would then be able to recover for all the, you know, all the hospital bills and all of that and keep it for themselves, right? Well, theoretically, they would have the right to do that. And by the way, may I reserve four minutes? I forgot to ask at the beginning. Sure. Okay. Theoretically, they have the right to do that. But the difficulty in Arizona is with the amendment to our medical malpractice rules, that the collateral source rule, while it hasn't been abolished, the jury learns that somebody paid the medical bill. So the estate really should have never brought this thing in the first place. It really wasn't going to get anything out of it, because you go to trial and the defense lawyer says, this is the greediest estate I've ever seen. They're asking you to pay for medical bills that this plan already paid for. It was a foolish thing to do, quite frankly. And when the estate realized it was unproductive and not a good thing to do, the estate went to the state probate court and said, we'd like permission just to drop this claim. The plan comes in to the state probate court and gets a full hearing, files a motion. There's a response reply. There's argument. And the probate judge says, well, I'm not going to force an estate to pursue a claim that the estate thinks is unwise. The estate doesn't have any money. The estate doesn't have the wherewithal to pay lawyers for this. It seems reasonably the estate should drop the plan. Without regard to ERISA. Without regard to ERISA. Well, the judge, the probate court, knew about ERISA and had been briefed and argued. But the rights under ERISA under McCutcheon go right back to the plan. The McCutcheon case is just, in one way for me in this case, it's a glorious opinion, because this is really a case for 19th century contract drafters. And we all, as we all learned in law school, your number one job in a contract case is to look at the contract. And if the contract resolves the issue and deals with the issue, you don't look any further. You don't worry about anything else. We're dealing with an equitable lien by agreement. And in the McCutcheon case it said that's fine, you can have equitable liens by agreement, but you start with the plan. Very specific. And some of the language of that opinion, that you apply rules, you go with the expressed commitments of the parties, you carry out the contract's provisions, you do what the contract says, what is bargained for in the valid agreement. We will not override a plain contract term. The agreement governs. All provisions of the agreement control. Over and over. But the plan defines, as I understood it, the plan included in covered person anyone who was acting on behalf of the person, including the estate. Yes. And the language is. So why doesn't that mean that they can get recovery from the estate? If I may read that one clause and then I'll answer the question. Just to have everybody's expression on the exact language. Covered person also includes any person acting on behalf of the covered person, including but not limited to the covered person's attorney and the covered person's estate. The attorneys were dismissed out of the lawsuit. They were actually sued, but they're gone. So it has to be a person acting on behalf of the covered person, including the covered person's estate. Under Arizona law, an estate does not act on behalf of the covered person. There are interested. Yes, Your Honor. And I quoted the statute. The estate acts on behalf of interested persons. It's not the decedent. Okay. If you say that the estate is acting on behalf of interested persons, not covered persons, but interested persons include, quote, any other person who has a property right in or claim against a trust estate or the estate of the decedent. And that's the Arizona statute 14-2-1201-28. Doesn't the ERISA plan have a claim against the estate? Yes. And they came into the probate court and said, we don't have any claim. We're just a subrogee here. We have no claim at all. We don't want to be treated as a creditor. By the way, they failed to file a timely claim, so they're out the door on claims. But we are not a claimant. Now, here they're saying they're a claimant. What that means, though, the estate would need to take into account the rights and claims of interested persons, not that the estate is acting on behalf of the decedent. The estate in that instance would be acting on behalf of creditors, including the plan. But acting on behalf of the plan is simply to accept the claim from the plan and in an evenhanded, proper way, as is done in probate courts in California and in Arizona, to administer that claim, to accept the claim or deny the claim. That's the only right that this plan has. And the plan foreswore that right. They did not file a timely claim. Despite that, and I think it's a remarkable example of judicial forbearance, the probate court listened to them, even though they weren't a formal claimant. It listened. They filed a motion under probate court. The probate court adjudicated the motion. The plan, the estate itself, it filed its own motion to drop this claim entirely and saying there's no reason for it to go forward. And the probate court considered all those arguments, including the plan's arguments, and came to the conclusion that the estate should indeed drop any claim that it was making for the medical bills. And I'm not sure. I mean, I took the California bar in 1984, and I haven't practiced here since then. It's probably the same rule in California as it is in Arizona or in the jurisdictions of the Seventh Circuit that the estate, when you get down to the nuts and bolts of it, the estate does not act on behalf of the decedent. The estate acts on behalf of a set of statutorily defined persons. And the plan is not within that set. And therefore, there was no jurisdiction for this. And when you get down to the merits, there's no way that an injunction should have been issued because there's nobody there on the other side. There's no covered person who should have been in the lawsuit. And I admit this is nitpicky, but that's what the Supreme Court wants us to be. In this case, it works for us. In another case, it won't. But from now on, it looks to me like what we have to do with these ERISA plans is to examine that contract with a fine-toothed comb and to see what the rights and responsibilities are of the parties, and that's what gets enforced.  Kagan.  Thank you, Your Honor. Good morning. Good morning, Your Honor, and may it please the Court. My name is Corey Langhofer, and my firm, Brownstein Hyatt Farber Schreck, represents Can you talk a little louder? That would help, I think. Yes, thank you. My firm, Brownstein Hyatt Farber Schreck, represents Black Box Network Services and its ERISA plan. This is an appeal of a preliminary injunction order, and so the review of this court begins and ends with the Satava standard. Satava has three questions. The first is, did the district court abuse its discretion? The problem for the estate under that question, under Satava, is American Trucking Associations. In that case, this court said, if the argument from the appealing party is that in granting a preliminary injunction, or denying it for that matter, the district court just applied the law to the facts wrong. That's really their argument. That's not an abuse of discretion for purposes of Satava. We don't reverse preliminary injunction orders if it's an argument about the law having been applied to the facts incorrectly. That's the first Satava question. The second is, did the district court identify and apply the correct legal standard? In this case, it's clear that they did. There's no argument from the estate, as I understand it, that Winter, the four preliminary injunction elements, doesn't apply, or that Sereboff doesn't control here. We all agree that Judge Snow identified and applied the correct legal standard. The third element, the third question under Satava, is did the district court rely on clearly erroneous facts? Although we have a disagreement about how the law should be applied to the facts, the parties don't really disagree on what the salient facts are. What does the document say? What happened to Mr. Lancaster? Were benefits paid on the facts that are salient? We don't have a factual dispute. And so then on the three questions under Satava, we see that the estate cannot make its showing to justify a reversal of Judge Snow's preliminary injunction order. There are a couple of ancillary questions I'd like to turn to. So you're saying that the district court didn't have to assess the public interest? The district court did need to assess the public interest. So why was it sufficient, the district court's assessment there? The district court, it is customary for the third and fourth elements under Winter, the third and fourth elements of the preliminary injunction standard, to receive much, let us say, briefer analysis. That doesn't make it right. So if you have to assess it, what was the assessment here? The district court, I can read the text if you like. You have it in front of you, Your Honor. The district court sufficiently found that the preliminary injunction would benefit the public. There is obviously a public interest in ERISA funds being solvent. This is why Congress passed ERISA. This is why the President signed ERISA. We have a public interest in making sure that employers can meet their obligations to their retirement funds, and ERISA guarantees that. So essentially, if we understand ERISA, we would know why the finding was sufficient. The district court doesn't go into that sort of length that you're going into right now, right? That is objectively true. The district court did not go to that length. Okay. It was, however, briefed in our motions for preliminary injunction, and the judge, of course, made a finding on the record. All right, so the estate, the plan has to be, what is your best legal authority that the estate is a covered person under the ERISA plan? Because at minimum, that has to be looked at jurisdictionally, correct? Yes, Your Honor. The jurisdictional question is controlled by Leeson. In Leeson, you had a plan arguing that the court did not have jurisdiction because the participant was not in the plan, so you were actually a participant. Leeson said, look, if the definition of the terms under the plan control, that's really, that goes to the elements of the claim. It doesn't go to the jurisdiction to resolve this claim. That's consistent with Bell v. Hood, where the Supreme Court said, if what determines the outcome of this case is our construction of wards in the statute, wards in the Constitution, there is jurisdiction to resolve that question. And the jurisdictional argument raised by the estate, respectfully, just confuses the merits with jurisdictional requirement. We've brought our claim under Section 502. There is subject matter jurisdiction for this court to resolve that claim. I'm sorry. My understanding is that you can, when you're reviewing an injunction, if there's a, if there's a, if it's wrong as a matter of law, you can vacate the injunction if there's an error in law. The question of what this plan provides and who is able to seek reimbursement, it seems to me a question of law. The argument is that the district court got that wrong. So what is your response? So two thoughts on that, Your Honor. First, under CITAVA, the court must have identified the correct legal standard, and that's really the legal standard question under CITAVA. Whether they applied that legal standard to the facts is not enough, though, under American Trucking Associations to justify reversal of a preliminary injunction. So what the court has to get correct on the law is the legal standard. We agree Winter and Saraboff control here, so that's not an issue. Application to the facts, insufficient under American Trucking Associations. Let me address, though, the actual merits of the issue. Sotomayor, that is what I'm trying to get to. It's been hard coming. Your brother's point seems to be that you missed the gate. You should have filed a claim in the estate at least to preserve this thing. That really you're trying, this is a last-minute attempt on your part to get these funds. I think you ought to reply. Thank you, Judge Ripple. I will. First, should we have filed in the probate court? The answer to that is no. 29 U.S.C. 1132e, so under ERISA section 502e, provides that our claim under 502 must be adjudicated in Federal court. The Federal court is the exclusive jurisdiction, has exclusive jurisdiction over our claim in this case. That means we did not need to go to the probate court. Even if there were not an exclusive jurisdiction vested in the district court here, it would have been improper for us to file a claim in probate court because when the deadline for filing the probate claim came and passed, we were not a creditor. We were a subrogate. Our, the estate had not yet received a payment from the hospital. They didn't have funds that they owed to us. We just had certain rights that were subrogated, but we didn't have a claim to particular assets or even a particular amount, yet because we didn't know the amount that the hospital would ultimately agree to pay to the estate. So we were not a creditor. And even if we were a creditor, we would have, the probate court would not have had jurisdiction to review our claim. Now, is the estate a covered person? It is a covered person, Your Honor. That's the question. The, the, first of all, let us look at one sentence that I think will resolve this issue clearly, and that is in Title 14, Section 3110 in the Arizona Revised Statutes. The law provides, as a matter of black-letter law, I submit, that the estate can sue and be sued as if it were the decedent. The estate reads 3110 to say the estate can sue as if it were the decedent. The statute says more than that. It says the estate can sue and be sued as if it were the decedent. That's true not only just on the text of the statute. It's also true as just a very intuitive matter. If I own a house today subject to a mortgage, and if I die tonight, tomorrow morning my estate owns the house, could my estate go to the bank and say, Mr. Langhoffer signed that mortgage, your, your lien is good against him, but not the estate because we never signed that? Of course not. Of course the bank could foreclose against my estate for defaulting just as it could foreclose against me. That's a black-letter truth under Arizona Revised Statutes. Take a little bit closer look at the language of 3110 and also 3703. It talks, those statutes both talk about the personal representative of the decedent. It doesn't say the personal representative of the estate. It says personal representative of the decedent. This indicates that under Arizona law, the estate is considered acting for the decedent, personal representative of the decedent. So we have then the answer to the question under the text of the plan. Is the estate acting for the decedent? Well, yes, Arizona law thinks of it that way. Arizona law clearly says it can be sued as if it's the decedent, and it just makes intuitive sense that of course where the estate is bound, or excuse me, where the decedent is bound, those obligations transfer to the estate on his death. I'd like to also turn to one of the points that Estates Counsel raised in his argument. And that was the idea that if this, if the value of its claim against the hospital is difficult to assess, if it's unlikely to collect much and the estate doesn't have the assets to pursue those claims or doesn't believe it does, then it should be allowed to walk away from this taking no value. If it's true that the estate actually values its claim at nil or close to nothing, then it would have been obligated under the terms of the plan to allow the plan, my client, to pursue that claim against the hospital. It couldn't just walk away. If it doesn't think the claim is worth more than its attorney's fees, its obligation was contractually to assign those claims and those rights to my client. In fact, the ---- I believe there was a spouse, John, or something like that. No, I don't think there was. Okay. So if we're talking about children and if they're not people, say, for, you know, I mean, sort of standardly, if you're not being supported by your parents anymore as a child, you wouldn't necessarily have the same kind of claim that a spouse who's being supported, you know, and say when it's a, you know, I don't know all the details of the age of the decedent or whatever, but arguably this could be a lawsuit where, you know, they would, you know, might be entitled to some, you know, the loss of their parent and, you know, certain things along those lines, but they're not going to have the same income claims that, say, a spouse would have of someone that is supporting them. So, I mean, there might not be a lot of money that children could get if they're adult children and they've long been emancipated from their parents. So what you're saying is then it should have been assigned to you to collect the hospital reimbursement for the hospital expenses? There are several claims against the hospital pending, or there were the children brought their own claims and the estate to the personal representative brought a claim. We don't argue that we had a right to receive all the children's claims. We only argue that we had a right to receive the proceeds from or independently prosecute the estate's claim. And we presented evidence in the district court, and the district court found our evidence credible, that instead of when confronted by my client with the subrogation rights under the plan, instead of cooperating and engaging my client in agreeing to sign those rights, they instead were nonresponsive and did what they could to proceed with the settlement without assigning the case and the subrogation rights to my client. So I believe Judge Snow found, in fact, that the personal representative had opportunistically extinguished the estate's claim and stood to recover a greater amount by virtue of that extinguishment, because the proceeds then would come to her through her personal claim instead of through the estate's claim. So if it were true that the estate had little value in this claim and should have just assigned it to my client, instead it did what it could opportunistically to extinguish that claim and increase the personal representative's own value. So is this a situation of bad drafting here? No, Your Honor. Could this have been drafted better? Whether it could have been drafted better, I think, is not the question before the Court. The question is, does — can the estate be sued as the representative of the decedent? And under Arizona statutory law, that is black and white clear. Section 3110 says it can be. Even if there weren't the statute, though, you could look to the authority of the decedent to bind his estate. We accept in probate law that individuals can bind their estates. This is the idea behind wills and trusts. Of course the decedent had the authority when he entered into the plan to say, my estate will be bound by this subrogation right just as I am. In fact, that's what covered person is defined to include estates. Of course the decedent had the authority to enter into a contract independent of the statute saying the estate can be sued as if he is the decedent. Of course he had the authority to bind his estate to the subrogation clause. If you have more questions, I'd be — No, thank you. Thank you. Before I start, Your Honor, I'm red-green colorblind. I think this machine for counting down minutes is some sort of red-green thing. Could just somebody tell me how many minutes I have left? You have 5 minutes and 2 seconds. Thank you, Your Honor. I'll go with that. It didn't keep me out of the Navy, but it kept me from flying. Okay. One thing I want to clear up, and I have to be very careful always with this, that an estate is bringing claims of a survival nature. It has the right to bring a medical bill claim because that's considered a survival claim under Arizona law. The estate doesn't bring wrongful death claim unless all the statutory beneficiaries are off the board, in which case the estate brings wrongful death claims. So what we had here was the estate had started the claims for the medical expenses and the statutory beneficiaries had their claims and there were loss of consortium claims. We've lost our beloved parent is what it comes down to. So those were the two separate claims that were ongoing. So if the estate drops out, the children don't actually have any right to sue for the medical expenses. That claim is gone and the only claim they have is for loss of consortium. And I think I misspoke earlier when I was dealing with a question from the Court. That's why I wanted to clear that up. As far as the plan backing away from saying we want the whole enchilada, that's the first time I've heard that today. They have been saying we want everything. And quite frankly, and my co-counsel will probably shoot me, but if you look at the plan document itself, the pages that are in our executive records, 64 to 68 or whatever they are, it's a very, very broad clause and it covers just about everything you can imagine. It does away with the make whole doctrine. It does away with the doctrine where you get attorney's fees if you're working for somebody else involuntarily. The attorney general doctrine. Everything is gone. This is bad drafting in the sense that they have the Monday morning hangover and realize that it should have been drafted differently and could have been drafted differently. I think there's artful ways to do this. My thought is that it would be in nature of a codicil. My co-counsel thinks maybe you could tweak the language, well, actually, you could reconstruct the language considerably and probably get an estate covered. But this did not cover an estate. The other thing that didn't come up that I thought we briefly addressed in the briefing and I want to make sure that I touch on it again is we're not trying to define the word estate out of the contract entirely. There are many kinds of estates. There's a guardianship estate, a conservatorship estate, a bankruptcy estate. For that matter. So this would apply to those kinds of estates while Mr. Lancaster was alive. But when he died under the terms, the very specific terms of this contract, and we are being very specific here because that's what we're supposed to do now, we prevail. The district court did not have subject matter jurisdiction. It should not have issued any sort of injunctive relief. If you ever do get to the merits of the injunction, we brief that pretty thoroughly. But every step along the way, if you don't have a covered person, you don't fulfill any of the requirements for an injunction. If I may, I'd like to cede my remaining time to the Court. I could talk on, but it's late and you've heard enough, I hope. Well, I don't think anyone has any additional questions, so you're perfectly able to do that. Thank you. Thank you, Judge Ruppel. Thank you for visiting us. And, Judge Schroeder, it's an honor to be here in your presence. Thank you very much. And me too? Yes, Your Honor. Oh, okay. I was thinking of Hirabayashi. California. Yeah, even the California. Yeah. Thank you very much. All right. Thank you. This matter will stand submitted, and this Court is now in recess for the week. Thank you.
judges: Schroeder, Ripple, Callahan